IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| BERNARD KAHALEHILI ANTOQUE, #A1049877,<br><br>Plaintiff,<br><br>vs.<br><br>HAWAII COMMUNITY CORRECTIONAL CENTER, *et al.*,<br><br>Defendants. | Civil No. 24-00134 MWJS-RT<br><br>ORDER DISMISSING SECOND AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS, ECF NO. 20, AND ACTION |

# INTRODUCTION

Before the Court is pro se Plaintiff Bernard Kahalehili Antoque's Second Amended Complaint for Violation of Civil Rights (SAC) filed pursuant to 42 U.S.C. § 1983.[1] ECF No. 20. In his SAC, Antoque alleges that prison officials at Hawaiʻi Community Correctional Center (HCCC) violated his Fourteenth Amendment rights by not mounting safety rails on his top bunk bed and delaying medical care after he fell

---

[1] Antoque is currently incarcerated at Saguaro Correctional Center. *See* ECF No. 20-1, at PageID.131; *see also* VINE, https://vinelink.vineapps.com/search/HI/Person (select "ID Number"; enter "A1049877"; and select "Search") (last visited Dec. 10, 2024).

while getting down from that bed.[2]  After conducting the required screening pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A, the Court finds that Antoque has not stated a colorable claim for relief.  And because he has already had three opportunities to do so, the Court finds that granting further leave to amend would be futile.  It therefore DISMISSES Antoque's SAC without leave to amend.

## BACKGROUND

**A.     Factual Background**

While Antoque was a pretrial detainee at HCCC, he fell from his top bunk bed on the afternoon of March 18, 2022.[3]  *See* ECF No. 20, at PageID.124; *id.* at PageID.116.  Antoque alleges that he fell because his bed did not have safety rails.[4]  *Id.* at PageID.124-25.  At the time of his fall, Antoque was assigned to HCCC's "Kono Hana" housing unit.  *Id.* at PageID.124.  According to Antoque, safety rails are "used throughout other housing units at HCCC."  *Id.*

---

[2]     Antoque names Defendants Warden Mahoe Cramer, Nurse Shante (last name unknown), and eleven Doe defendants in their individual capacities.  ECF No. 20, at PageID.113-14.

[3]     Antoque's factual allegations are accepted as true for purposes of screening.  *See Nordstrom v. Ryan*, 762 F.3d 903, 906 (9th Cir. 2014).

[4]     In a document attached to his First Amended Complaint, Antoque said that he sustained this injury while trying to get down from his bed.  ECF No. 9-2, at PageID.73.

After his fall, Antoque could not descend stairs without assistance, and he was taken to the medical unit in a wheelchair. *Id.* at PageID.128. In the medical unit, Antoque was seen by Nurse Shante. *Id.* Nurse Shante allegedly asked Antoque if he would go to the hospital if he were not incarcerated. *Id.* When Antoque responded that he would, Nurse Shante said, "No you wouldn't." *Id.* Nurse Shante returned Antoque to his cell with crutches, Ibuprofen, and instructions to "drink a lot of water." *Id.*

Three days after his fall, after continuing to experience "significant pain" and an inability to walk, Antoque submitted a "grievance" to prison officials. *Id.* The next day, X-rays were taken that came back "normal." *Id.* at PageID.128-29. The day after that, Antoque was seen for an MRI, and that imaging apparently revealed a torn meniscus in his knee. *Id.* at PageID.129; *see also id.* at PageID.116. Antoque underwent knee surgery on May 5, 2022. *Id.* at PageID.129.

According to Antoque, he experienced "multiple delays" during his post-operative care after returning to HCCC—for example, in receiving physical therapy. *Id.* He attributes these delays to Nurse Shante and five other unnamed prison officials. *Id.* Antoque alleges that the delays resulted in reduced function of his knee, which he states "now has only 50% functionality." *Id.*

B.     **Procedural Background**

Antoque commenced this action on January 15, 2024. ECF No. 1, at PageID.6. After granting Antoque's Application to Proceed In Forma Pauperis by a Prisoner on

3

April 12, 2024, ECF No. 5, the Court dismissed the complaint on April 17, 2024.  ECF No. 6.  In dismissing Antoque's initial complaint, the Court explained that his claims against HCCC and the former Hawaiʻi Department of Public Safety were barred by the Eleventh Amendment.  *Id.* at PageID.28-29.  But the Court gave Antoque an opportunity to file an amended pleading.  *Id.* at PageID.30-31.

The Court received Antoque's first amended complaint on June 3, 2024, ECF No. 9, and dismissed that pleading on June 20, 2024, ECF No. 10.  The Court concluded that Antoque's claims against HCCC's warden and Nurse Shante in their official capacities were barred by the Eleventh Amendment.  ECF No. 10 at PageID.80-81.  And it further concluded that any claims for injunctive relief were moot because Antoque is no longer incarcerated at HCCC.  *Id.* at PageID.81.  The Court also provided Antoque with the legal standards for supervisory liability and Fourteenth Amendment claims.  *Id.* at PageID.82-86.  It then gave Antoque another opportunity to file an amended pleading. *Id.* at PageID.86-87.

The Court received Antoque's SAC on November 26, 2024.  ECF No. 20.  In the SAC, Antoque alleges that the HCCC Warden and five unnamed prison officials violated his Fourteenth Amendment rights by failing to install safety rails on his top bunk bed (Count I) and by acting negligently (Count II).  *Id.* at PageID.124-27.  He further alleges that Nurse Shante and five other unnamed prison officials violated his

4

rights by delaying medical care (Count III).  *Id.* at PageID.128-30.  Antoque seeks thirty million dollars in "punitive damages."  *Id.* at PageID.116.

## DISCUSSION

**A.    Statutory Screening**

The Court is required to screen all in forma pauperis prisoner complaints filed against government officials pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A.  *See, e.g., Byrd v. Phx. Police Dep't*, 885 F.3d 639, 641 (9th Cir. 2018).  Complaints that, among other things, fail to state a claim for relief must be dismissed.  *See* 28 U.S.C. § 1915(e)(2)(B); *Lopez v. Smith*, 203 F.3d 1122, 1126-27 (9th Cir. 2000) (en banc).

Screening under 28 U.S.C. §§ 1915(e)(2) and 1915A involves the same standard as that used under Federal Rule of Civil Procedure 12(b)(6).  *See Rosati v. Igbinoso*, 791 F.3d 1037, 1039 (9th Cir. 2015) (per curiam).  Under this standard, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (cleaned up).  A claim is "plausible" when the facts alleged support a reasonable inference that the plaintiff is entitled to relief from a specific defendant for specific misconduct.  *See id.* at 678-83.

In conducting this screening, the Court liberally construes pro se litigants' pleadings and resolves all doubts in their favor.  *See Hebbe v. Pliler*, 627 F.3d 338, 342 (9th Cir. 2010).  The Court must grant leave to amend if it appears that the plaintiff can correct the defects in the complaint.  *See Lopez*, 203 F.3d at 1130; Fed. R. Civ. P. 15(a)(2).

5

When a claim cannot be saved by amendment, however, dismissal without leave to amend is appropriate. *See Sylvia Landfield Tr. v. City of Los Angeles*, 729 F.3d 1189, 1196 (9th Cir. 2013).

**B.     Fourteenth Amendment Claims of Pretrial Detainees**

All Antoque's claims are based on events that occurred while he was a pretrial detainee at HCCC. *See* ECF No. 20, at PageID.124-30.

Under the Due Process Clause of the Fourteenth Amendment, a pretrial detainee cannot be punished prior to an adjudication of guilt. *Bell v. Wolfish*, 441 U.S. 520, 535-36 (1979); *Fraihat v. U.S. Immigr. & Customs Enf't*, 16 F.4th 613, 647 (9th Cir. 2021). In general, "[t]o constitute punishment, a government action must (i) harm a detainee and (ii) be intended to punish him." *Houston v. Cnty. of Maricopa*, 116 F.4th 935, 940 (9th Cir. 2024).

In evaluating a pretrial detainee's Fourteenth Amendment claims regarding excessive force, threats to safety, and the denial of medical care, courts in the Ninth Circuit apply an objective standard. *See Castro v. Cnty. of Los Angeles*, 833 F.3d 1060, 1071 (9th Cir. 2016) (en banc); *Gordon v. Cnty. of Orange*, 888 F.3d 1118, 1124-25 (9th Cir. 2018). For threat-to-safety and medical-care claims specifically, a pretrial detainee must allege facts showing that: (1) a particular defendant made an intentional decision with respect to the conditions under which the pretrial detainee was confined; (2) those conditions put him at substantial risk of suffering serious harm; (3) the defendant did

6

not take reasonable available measures to abate that risk, even though a reasonable official in similar circumstances would have appreciated the high degree of risk—making the consequences of the defendant's conduct obvious; and (4) by not taking such measures, the defendant caused the detainee's injuries. *See Castro*, 833 F.3d at 1071; *Gordon*, 888 F.3d at 1125.

Regarding the third element, the defendant's conduct must be objectively unreasonable, a test that necessarily turns on the facts and circumstances of each case. *Gordon*, 888 F.3d at 1125. A "mere lack of due care by a state official does not deprive an individual of life, liberty, or property under the Fourteenth Amendment.'" *Castro*, 833 F.3d at 1071 (cleaned up). Thus, a pretrial detainee must allege facts showing "more than negligence but less than subjective intent—something akin to reckless disregard." *Castro*, 833 F.3d at 1071.

Although the Ninth Circuit has not expressly held that this four-part, purely objective test applies to all pretrial detainees' conditions-of-confinement, several of the court's decisions strongly suggest that it does. *See, e.g.*, *O. L. v. Cnty. of Orange*, No. 23-55258, 2024 WL 3466243, at *1 (9th Cir. July 19, 2024) (citing *Gordon* in concluding that the district court properly granted summary judgment on plaintiff's claims challenging the conditions of her pretrial confinement); *Smith v. Washington*, 781 F. App'x 595, 597-98 (9th Cir. 2019) (noting that "[a] pre-trial detainee bringing a Fourteenth Amendment conditions of confinement claim must show that the conditions under which that

7

detainee was confined 'put the plaintiff at substantial risk of suffering serious harm'" (quoting *Castro*, 833 F.3d at 1071)).

Accordingly, judges in this district and others have applied the four-part test described above to evaluate pretrial detainees' conditions of confinement claims. *See, e.g.*, *Carey v. Gutierrez*, No. 2:24-CV-2035, 2024 WL 3952246, at *2 (E.D. Cal. Aug. 27, 2024); *Madison v. Pierce Cnty. Jail*, No. 322CV05246, 2022 WL 16856967, at *4 (W.D. Wash. Oct. 26, 2022), *report and recommendation adopted*, No. 3:22-CV-05246, 2022 WL 16854274 (W.D. Wash. Nov. 10, 2022); *Pitts v. Espinda*, No. CV 20-00431, 2021 WL 3669309, at *9 (D. Haw. Aug. 18, 2021). The Court, therefore, will apply the same four-part test to evaluate Antoque's claims based on the lack of safety rails on his top bunk and the medical care he received after his fall.

**1.    Claims in Counts I and II Related to Safety Rails**

In Count I, Antoque alleges that the HCCC warden and five unnamed defendants acted with deliberate indifference by failing to install safety rails on the top bunks in the Kono Hana housing unit. ECF No. 20, at PageID.124-25. In Count II, Antoque alleges that the same defendants acted negligently in failing to install safety rails. *Id.* at PageID.126-27.

Antoque's claims in Count I must be dismissed for two reasons. First, "the absence of safety rails on a top bunk does not expose inmates to a 'substantial risk of suffering serious harm.'" *Gill v. Las Vegas Metro. Police Dep't*, No. 222CV01199, 2022 WL

8

17669958, at *3 (D. Nev. Dec. 14, 2022) (quoting Gordon, 888 F.3d at 1125); *cf. Jefferson v. Dep't of Pub. Safety & Corr.*, No. 10-1317, 2013 WL 3776224, at *3 (W.D. La. July 16, 2013) (analyzing Eighth Amendment claim and concluding that "the lack of guard rails on a top bunk does not create a substantial risk of serious harm"); *Patton v. Doran*, No. CIV. 3:CV-04-2233, 2005 WL 2334367, at *2 (M.D. Pa. Sept. 20, 2005) (analyzing Eighth Amendment claim and concluding that "[f]ailing to install safety rails on an upper bunk . . . that is to be exclusively utilized by adults does not constitute a condition which would pose an unreasonable risk of future injury"). The fact that Antoque fell while getting down from his bunk, while certainly unfortunate, is not sufficient to demonstrate that the failure to install guard rails on the top bunk necessarily created a substantial risk of serious harm.

Second, Antoque has not alleged facts showing that any defendant's conduct in relation to the absence of safety rails in Kono Hana was objectively unreasonable. Nothing in the SAC suggests that Antoque was more likely than the average inmate to fall from a bunk without safety rails. *See Gill*, 2022 WL 17669958, at *3 ("For example, Plaintiff does not allege that he suffered from seizures, a sleep disorder, or balance issues."). Nor does the SAC include facts suggesting that any prison official knew or should have known that an inmate might fall while getting down from a top bunk. For example, Antoque does not allege that there were past instances of inmates falling from their bunks at HCCC. *See Ladson v. Doe #1*, No. 24-CV-5694, 2024 WL 4771397, at *4

9

(E.D. Pa. Nov. 12, 2024) ("The general absence of a ladder for top bunks or other safety mechanisms in a prison cell at most suggests negligence and does not give rise to a constitutional claim."). Even if safety rails are "a standard safety feature on commercial bunk beds, and used throughout other housing units at HCCC," as Antoque alleges, ECF No. 20, at PageID.124, these facts do not necessarily suggest that the defendants' conduct was objectively unreasonable. *Cf. Copeland v. Perry*, No. 1:22-CV-00109, 2023 WL 3177832, at *4 (W.D. Pa. May 1, 2023) (dismissing an Eighth Amendment claim where safety rails were removed from top bunks in only one housing unit). Indeed, prison officials might reasonably decide not to include safety rails on certain top bunks because they can be broken off and used as weapons or escape devices. *See Bultema v. United States*, 359 F.3d 379, 384 (6th Cir. 2004). Thus, Antoque's claims in Count I must be dismissed.

In Count II, Antoque asserts that the HCCC warden and the five unnamed defendants acted negligently by failing to install safety rails on the top bunks in Kono Hana. A pretrial detainee's claim based on the conditions of his confinement, however, requires more than negligence. *See Castro*, 833 F.3d at 1071. A pretrial detainee must show "something akin to reckless disregard." *Id.* For the reasons set forth in the preceding paragraph, Antoque has not alleged facts meeting this standard. Antoque's claims in Count II are therefore also dismissed.

### 2. Claims in Count III Based on Medical Care

In Count III, Antoque alleges that Nurse Shante and five other unnamed prison officials violated his rights by delaying medical care. ECF No. 20, at PageID.128-30. Antoque's allegations focus on two distinct periods—that is, immediately after his fall, and after he had surgery. The Court will separately address each of these periods.

a. Antoque alleges that the treatment he received immediately after his fall was inadequate. Right after he fell, Antoque could not descend stairs without assistance, and he was taken to the medical unit in a wheelchair. *Id.* at PageID.128. When he arrived, Antoque allegedly said that he would go to the hospital if he were not incarcerated, but Nurse Shante did not send him to the hospital; instead, she sent Antoque back to his cell with crutches, Ibuprofen, and instructions to drink a lot of water. *Id.* Three days later, Antoque was still experiencing significant pain and could not walk. *Id.* Two days after that, an MRI revealed a torn meniscus in Antoque's knee, and about six weeks later, he underwent surgery. *Id.* at PageID.128-29.

Even assuming Nurse Shante's initial treatment of Antoque created a substantial risk that he would suffer serious harm, he has not plausibly alleged that Nurse Shante's conduct was objectively unreasonable. *See Gordon*, 888 F.3d at 1125. Nurse Shante provided Antoque with crutches and medication before returning him to his cell. Antoque does not allege facts suggesting that he could not walk, even with crutches, that doing so caused him particular pain, or that the prescribed Ibuprofen was

11

inadequate.  Although Antoque alleges that Nurse Shante dismissed his statement that he would have gone to the hospital if he were not incarcerated, ECF No. 20, at PageID.128, Antoque does not allege that he ever asked Nurse Shante to go to the hospital or to see a doctor.  Indeed, Antoque does not allege that he ever told Nurse Shante that he required additional care.  *See Sullivan v. Montana*, No. CV2000080, 2021 WL 2269998, at *2 (D. Mont. May 10, 2021) ("[The plaintiff] does not assert that he asked for medical care and was denied it, or that any defendant knew he was seriously injured and failed to do anything about it."), *report and recommendation adopted sub nom. Sullivan v. Montana*, No. CV 20-80, 2021 WL 2155062 (D. Mont. May 27, 2021).

Antoque alleges that Nurse Shante should have ordered "diagnostic imaging, immediately."  ECF No. 20, at PageID.130.  Antoque, however, must allege facts showing more than a lack of due care.  *See Gordon*, 888 F.3d at 1125; *see also Lau v. Kekuaokalani*, No. CV 17-00258, 2017 WL 3187216, at *5 (D. Haw. July 25, 2017) ("[M]edical malpractice or mere negligence is insufficient to make out a violation of the . . . Fourteenth Amendment.").  Antoque's apparent disagreement with Nurse Shante's course of treatment is not enough to sustain a Fourteenth Amendment claim. *See Flores v. Taghizadeh*, No. 22-15510, 2023 WL 6389414, at *1 (9th Cir. Oct. 2, 2023); *see also Conway v. Muva*, No. 123CV00898, 2023 WL 8478203, at *3 (E.D. Cal. Dec. 7, 2023) ("[A]llegations of differences of opinion over proper medical care, inadequate medical treatment, medical malpractice, or even gross negligence by themselves do not rise to

12

the level of [a] . . . Fourteenth Amendment violation."). Because Antoque has not alleged facts showing that Nurse Shante's conduct immediately after his fall was objectively unreasonable, this part of Count III must be dismissed.

      b.  Antoque further alleges in Count III that he experienced "multiple delays in his post-op care, to include physical therapy" after he received surgery. ECF No. 20, at PageID.129. Although Antoque attributes these delays to Nurse Shante and five unnamed prison officials, he does not specify what any of these defendants purportedly did or failed to do that delayed his postoperative care. Without factual allegations showing a causal connection between the defendants' conduct and the alleged violation of Antoque's rights, this portion of Count III must also be dismissed. *See Chaudhry v. Aragon*, 68 F.4th 1161, 1170-71 (9th Cir. 2023). Additionally, because Antoque does not specify what any of these defendants did or failed to do, he has not alleged facts showing that their actions were objectively unreasonable. *See Gordon*, 888 F.3d at 1125.

      For the foregoing reasons, all of Antoque's claims in Count III are dismissed.

**C.**    **Strikes Under 28 U.S.C. § 1915(g)**

      Antoque is notified that this dismissal may count as a "strike" under 28 U.S.C. § 1915(g). Under this "3-strikes" provision, a prisoner may not bring a civil action or appeal a civil judgment in forma pauperis,

> if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or

13

fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. § 1915(g).

## CONCLUSION

(1) The SAC, ECF No. 20, is DISMISSED pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b).

(2) Because Antoque has had three opportunities to state a plausible claim for relief and has been unable to do so, and granting further leave to amend would be futile, the SAC is DISMISSED without leave to amend.

(3) Antoque is NOTIFIED that this dismissal may count as a strike under 28 U.S.C. § 1915(g).

(4) If Antoque decides to file a notice of appeal, the Court certifies that doing so would not be frivolous or in bad faith, although the Court takes no position on the merits of such an appeal, and therefore he may proceed in forma pauperis should he decide to appeal. *See* Fed. R. App. P. 24(a)(3)(A).

(5) The Clerk is DIRECTED to enter judgment and close this case.

//

//

//

//

//

14

IT IS SO ORDERED.

DATED: December 12, 2024, at Honolulu, Hawaiʻi.



/s/ Micah W.J. Smith
_____
Micah W.J. Smith
United States District Judge

_____
Civil No. 24-00134 MWJS-RT; *Bernard Kahalehili Antoque v. Hawaii Community Correctional Center, et al.*; ORDER DISMISSING SECOND AMENDED COMPLAINT FOR VIOLATION OF CIVIL RIGHTS, ECF NO. 20, AND ACTION